# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BARRY B. FROST**, | Case No. 6:16-cv-1896-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **NANCY A. BERRYHILL**, Commissioner of Social Security, | |
| Defendant. | |

Richard F. McGinty, MCGINTY & BELCHER, P.O. Box 12806, Salem, OR 97301. Of Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Ryan Ta Lu, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Barry B. Frost ("Plaintiff") seeks judicial review of the decision of Social Security Commissioner denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. After a review of the record, the Court reverses and remands the Commissioner's decision for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born on August 6, 1953, was 55 years old as of the date of his alleged disability onset, and is currently 64 years old. Plaintiff lives in Corvallis, Oregon. AR 110. He lives alone and receives the majority of his care from his partner, Mary. He holds a four-year

degree and has past relevant work as a Database Software Developer. AR 118. Plaintiff filed for

DIB on September 6, 2012, citing primarily discogenic and degenerative disc disorders and

secondarily affective mood disorders, alleging a disability onset date of July 1, 2009. AR 110,

214. Upon notice that his application was denied, Plaintiff filed for reconsideration in March

2013. AR 138. Plaintiff filed a request for an administrative hearing after subsequent denial upon

reconsideration. AR 145. Plaintiff received an administrative hearing in 2014 before an

administrative law judge ("ALJ"), and a supplemental hearing several months later. The ALJ

then issued a partially favorable opinion, finding Plaintiff disabled as of June 18, 2014, but not

earlier. AR 15-26. Plaintiff appealed the ALJ's partially-favorable decision to the Appeals

Council, who denied review, making the ALJ's determination the final decision of the agency.

AR 1. Plaintiff challenges the ALJ's decision before this Court. Plaintiff argues that the ALJ

erred in determining that Plaintiff was not disabled until June 18, 2014, because Plaintiff was

disabled as of the alleged disability onset date, July 1, 2009.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.   Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.   Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.   Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.   Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.   Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At step one, the ALJ found Plaintiff was not currently engaged in substantially gainful activity ("SGA") and has not been since July 1, 2009. Because Plaintiff had not been performing SGA, the inquiry proceeded to step two. At step two, the ALJ determined, based on the medical record and Plaintiff's testimony, that Plaintiff suffers from impairments that are "severe" within the meaning of the Social Security Regulations ("SSR"). The ALJ found that Plaintiff's cervical degenerative disc disease and mild left shoulder bursitis significantly limit Plaintiff's ability to perform basic work activities. The ALJ also determined that Plaintiff's alleged, remaining diagnoses of hypertension, migraines, heel injury, allergic rhinitis, depression, and adjustment disorder were not severe per the SSRs.

At step three, the ALJ concluded that Plaintiff's impairments did not meet or equal the listed impairments in 20 C.F.R. 404.1521. The ALJ then assessed Plaintiff's RFC to determine

Plaintiff's functional limitations necessary for step four. In this assessment, the ALJ concluded that Plaintiff's subjective pain testimony regarding his impairments was not fully credible before June 18, 2014. The ALJ then prepared two RFC analyses, one for Plaintiff's abilities from July 1, 2009 until June 18, 2014, and one for June 18, 2014 through the date of the ALJ's decision, April 10, 2015. At step four, the ALJ found both of Plaintiff's RFCs barred him from continuing past relevant work.

Finally, at step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded that from July 1, 2009 until July 18, 2014, Plaintiff possessed transferable skills and could perform the work of a data clerk, DOT 209.687-010. Because Plaintiff is of advanced age, the ALJ evaluated the degree of vocational adjustment Plaintiff would undergo. Relying on the VE testimony, the ALJ found Plaintiff would undergo "little to no" vocational adjustment. This finding led the ALJ to conclude that Plaintiff was not disabled until July 18, 2014. The ALJ found that as of July 18, 2014, however, based in part on the chiropractic recommendation for a medial branch block, that Plaintiff would be unable to continue work as a data clerk. Thus, the ALJ found Plaintiff disabled as of that date.

## DISCUSSION

Plaintiff challenges the ALJ's determination finding Plaintiff disabled as of June 18, 2014. Plaintiff argues that the ALJ erred by: (A) discrediting Plaintiff's subjective pain testimony without valid reasons; (B) failing to identify Plaintiff's transferable skills or degree of vocational adjustment; (C) determining Plaintiff's RFC without including certain functional limitations; and (D) arbitrarily selecting Plaintiff's disability onset date. The Court discusses each of Plaintiff's contentions in turn.

**A.      Credibility Analysis**

There is a two-step process for evaluating a claimant's testimony regarding the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Plaintiff argues that the ALJ erred in his credibility analysis because the ALJ failed to provide clear and convincing reasons to discount Plaintiff's testimony. The ALJ cited Plaintiff's retirement reasons, activities of daily living ("ADL"), and lack of objective medical evidence. AR 21. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359

F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

### 1. Retirement Reasons

The ALJ noted that Plaintiff retired "in part so that a co-worker would not be laid off . . . suggest[ing] that the claimant did not stop working at that time solely due to his impairments." AR 21 (citations omitted). Plaintiff conceded that his retirement motivations were multifactorial. AR 230. Plaintiff explained in his testimony, however, that being able to save a coworker's job was just "another" justification to "talk [himself] into leaving" his employer of more than 30 years. AR 101. The ALJ's assertion that this undermines Plaintiff's symptomatic testimony does not rise to the level of "clear and convincing."

To discount a Plaintiff's subjective statements of symptoms, the ALJ must present findings identifying specific evidence and how it is contradictory to Plaintiff's testimony. *Burch*, 490 F.3d at 680 (9th Cir. 2005); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ characterizes Plaintiff's retirement as inconsistent with Plaintiff's claims of disabling pain but does not give specific findings as to what testimony is contradicted. The Court is unconvinced Plaintiff's admission he needed "an additional excuse" to convince himself to retire is clear and convincing. The admission is not inconsistent with Plaintiff's retiring for disability; rather, it is directly in line with Plaintiff's testimony that he retired because of pain, but considered this another motivating factor. Because the ALJ fails to specify how Plaintiff's retirement testimony is contradicted, the ALJ has not provided a clear and convincing reason to discount Plaintiff's pain testimony.

## 2. Activities of Daily Living

The ALJ can use ADLs to discount Plaintiff's credibility in two ways: showing that the ADLs amount to skills transferable to the data clerk position or showing that the ADLs contradict Plaintiff's subjective pain testimony. *Orn*, 495 F.3d at 639; *see also Burch*, 400 F.3d at 681. Not all disabilities present in the same way, and those with disabilities must be able to grasp for normalcy. The Ninth Circuit recognizes "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Here, the ALJ concluded that Plaintiff's ADLs contradict Plaintiff's pain testimony. AR 21. Plaintiff testified that "[s]itting still for any length of time" causes him pain, except when sitting in his specialized chair to decompress his neck. The ALJ discounted Plaintiff's pain because, after retiring, "claimant retained an ability to golf, hike, ski, ride a motorcycle, engage in repairs/projects on his property and take a 'long vacation.'" The activities cited by ALJ are not inconsistent with Plaintiff's testimony regarding his particular limitations. Plaintiff testified that golf gives him "an excuse to 'walk the course.'" AR 248. He testified that, during the period of alleged disability, he could bike with a special suspension bike made for sufferers of chronic neck pain, although he has not used it recently. In 2014, he reported he was capable of hiking, taking walks, and riding motorcycles and that in 2011 he took a "long vacation." AR 400, 402. A claimant whose pain makes it difficult for them to walk is contradicted when ADLs show they take mile-long hikes; a claimant who says their pain is worsened with sitting, however, does not warrant an adverse credibility finding because they are walking.

Plaintiff also testified regarding his desire to follow his doctors' advice to get more exercise and preserve the movement and abilities he already has. AR 84. Evidence that Plaintiff's doctors encourage his walking and limited exercise is available throughout the record. His

physical therapist also "instructed [him] in stretching and strengthening exercise to decrease pain." AR 362. His treating physicians, Drs. Graham and McQuillan, also specifically recommended and encouraged exercise as recommendations for dealing with Plaintiff's neck and back pain. AR 297, 307, 340-41, 410-11. An attempt to follow doctors' orders should not be the basis of an adverse credibility finding. Moreover, Plaintiff testified that walking helped his pain and sitting is what hurts. AR 36. Accordingly, the ADLs that include walking are fully consistent with Plaintiff's testimony.

### 3. Objective Medical Record

The ALJ found that, "[u]ntil June 2014, the claimant's testimony at hearing did not match the objective evidence that demonstrated multiple normal physical examinations and notations that the claimant's pain was controlled by pain killer medications." AR 21. The ALJ's recitation of the record also includes highlights of the treatment Plaintiff received that the ALJ considered "essentially routine and conservative in nature." AR 22. The ALJ concluded that this conservative treatment was successful until June 2014, and thus Plaintiff's disability began at that time. Substantial evidence in the record, however, does not support that Plaintiff's pain was "controlled" nor that his conservative treatment was successful until June 2014.

When considering the medical record, an ALJ must evaluate the overall picture the record illustrates and may not "single[] out a few periods of temporary well-being from a sustained period of impairment and relied on those instances to discredit [Plaintiff]." *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014). Although an ALJ must necessarily "pick" out of the record examples to support their adverse credibility finding, those examples must "constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *Id*. The ALJ must not read into the record an underlying narrative of improvement where none exists.

In January 2008, before the alleged disability onset date, Dr. Craig Graham, M.D. recognized that Plaintiff's chronic pain was "worsening." AR 332-33. Plaintiff, at the time, took Ibuprofen and Hydrocodone to alleviate symptoms. Plaintiff attended physical therapy with Mr. Shawn Steiner, MPT, CSCS, over the summer in 2008 and received a TENS unit, yet did not report relief from symptoms. AR 313, 363. Beginning in April 2009, however, the pain worsened and pain medication no longer seemed to work. AR 297. Plaintiff's back pain became characterized as "chronic" beginning in May 2009, and he reported tingling in fingers and toes, connected to his neck pain, in June 2009. AR 302-3, 305. Over the next 31 months, Plaintiff and his doctor tried various prescriptions, increasing, decreasing, and substituting various mixes of oxycodone, hydrocodone, and tramadol to better manage Plaintiff's pain. AR 297, 303, 307, 387-88, 390-93, 400-411.

In March 2010, Dr. Lance McQuillan, M.D. observed Plaintiff's "[g]radual unfortunate progression of symptoms, referring to Plaintiff's neck pain. AR 417. Furthermore, Plaintiff reported tingling in fingers and toes radiating down from his neck as early as 2009 and as recently as 2014. In 2011, Plaintiff noticed his "pain radiating from midback to the front side" resulting in numbness in his ribs. AR 469. Plaintiff reported his pain medication losing effect in March 2011, "rush[ing] into clinic [sic]" with "a list of complaints" mainly relating to neck and back pain. AR 387, 407. In July 2012, Plaintiff returned to the clinic, requesting his second pain medication increase that month, as his medications were no longer effective. AR 387-8, 390.

Dr. McQuillan suggested trial osteopathic manipulative treatment in April 2013 to help Plaintiff's neck pain. AR 371. During that same visit, Plaintiff reported numbness in his right heel, which Dr. McQuillan attributed to possible nerve "impingement," causing Dr. McQuillan to order a thoracic-lumbar MRI to further assess the degradation before moving forward with new

recommendations for treatment. *Id*. Plaintiff reported "severe" pain later that year in August

2013, and Dr. McQuillan noted Plaintiff's condition had "deteriorated." AR 463-4. In November

2013, Plaintiff reported "sharp pains radiating from his buttocks to his knee and foot." AR 469.

If Plaintiff had been responding well to conservative treatment until June 2014, he would not

have been referred for an MRI.

In January 2014, Plaintiff reported numbness on his right side rib cage and abdominals.

*Id*. Although Dr. McQuillan noted in his "impressions" that "symptoms [are] improving," this

note, taken in context, does not demonstrate a level of improvement to negate Plaintiff's record

of deterioration. In April 2014, Plaintiff expressed concern about his rib numbness progressing to

the left side and by May, reported still worsening back pain, uncontrolled by medication,

accompanied by decreased sensation on his abdomen. AR 474. By August 2014, he described

having "no feeling" in his right ribs. AR 453.

In light of the symptom progression as shown in the medical record, the objective

medical record does not contradict Plaintiff's subjective testimony. Moreover, even if Plaintiff's

testimony as to the intensity, persistence, and limiting effect were not supported by the objective

medical record, lack of medical evidence cannot be the sole justification for an adverse

credibility finding. *See* SSR 96-7p, 1996 WL 374186, at *1; *Robbins v. Soc. Sec. Admin.,* 466

F.3d 880, 883 (9th Cir. 2006). The Court has found that neither of the other two reasons given by

the ALJ are clear and convincing to discount Plaintiff's credibility. Accordingly, this reason does

not support the ALJ's credibility determination.

## B. Transferable Skills and Degree of Vocational Adjustment

Plaintiff contends that the ALJ failed properly to identify Plaintiff's transferrable skills

and degree of vocational adjustment. At step five, the ALJ must show that Plaintiff has

transferable skills by identifying those skills. Plaintiff must then be able to use those identified

skills in the new vocation proposed. Because Plaintiff is of advanced age, the ALJ must also find

that the occupational transition requires "little to no vocational adjustment." If the ALJ concludes

that the position would require more than "little to no" adjustment, the ALJ must find Plaintiff

disabled. 20 C.F.R. § 404, P, App. 2 § 201.00(f).

"When a finding is made that a claimant has transferable skills, the acquired work skills

*must be identified*, and specific occupations to which the acquired work skills are transferable

must be cited in the . . . ALJ's decision." SSR 82-41, *available at* 1982 WL 31389 (Jan. 1, 1982)

(emphasis added). The Ninth Circuit requires specific findings per SSR 82-41. *Bray v.*

*Commissioner*, 554 F.3d 1219, 1225 (9th Cir. 2009) (rejecting the Commissioner's argument that

SSR 82-41 is not applicable when an ALJ relies on VE testimony). "The ALJ is *required* to

make certain findings of fact and include them in the written decision." *Id*. at 1225. In *Bray*, the

Commissioner argued that specific findings are unnecessary under SSR 82-41 when the ALJ

relies on expert testimony. *Id*. at 1224-5. But SSR 82-41 presumes an ALJ may consult and rely

on an expert.[1] Because of this contemplation by the Rule, in *Bray*, the court found "it makes little

sense to interpret the SSR's provision requiring specific written findings as inapplicable

whenever an expert is involved" and held that the rule applies even in situations where the ALJ

relies solely on VE testimony. *Id*. at 1225.

For claimants 55 years of age and older, the ALJ must make an additional finding of the

degree of vocational adjustment required. 20 C.F.R. § 404.1568(d)(4). "In order to find

transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and

over), there must be very little, if any, vocational adjustment required in terms of tools, work

processes, work settings, or the industry." *Bray*, 554 F.3d at 1224. If the specific skills identified

---

[1] "Consultation with a [VE] may be necessary to ascertain whether and how these skills
are transferable." SSR 82-41at *4.

or the "tasks required" in the new position are "substantially similar to those required" in a claimant's past relevant work, the claimant is not disabled. *Id.* (quoting 20 C.F.R. § 404, P, App. 2 § 201.00(f)).Otherwise, an ALJ must find the claimant "disabled." *Id.*

In the case at bar, the ALJ stated that: "The vocational expert testified the claimant's previous work is so similar to a data clerk as cited above and the claimant would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." AR 24. The VE's testimony at the hearing, however, was as follows:

> Q (ALJ): Okay, so the question is are there skills that would be transferable with little or no vocational adjustment, which I suppose would be then in the software field. Are there skills transferable to sedentary work?

> A (VE): With this—this background, certainly there's transferable skills. There's a broad base of knowledge here in application. And all the way through coding and—and development of software. However, in the world of technology, some of this is remote experience at this time. Are there—are there basic skills? Certainly, and I would say at a semi-skilled level at 3 to 4 and it would take away a lot of the administrative role of being involved in development at the administration level in today's technology. He moved from software development and then went into a higher level and then went into network administration. So there was a steady flow or increase of skills as I read the job description, Your Honor.

AR 51.

The VE noted that some of Plaintiff's experience was "remote" but did not identify what experience. The VE also testified that Plaintiff had some "basic skills," apparently indicating those skills were transferable to a semi-skilled position, but failed to identify those skills. Additionally, the VE failed clearly to testify to the degree of vocational adjustment. Although the VE mentioned some ambiguous "broad base of knowledge," it appears to have been from Plaintiff's coding experience that was remote in time. The VE's conclusion that there are "certainly" basic skills does not amount to an identification of the specific transferable skills,

which SSR 82-41 requires. Nor did the ALJ seek clarification from the VE or specifically identify any transferable skills or degree of vocational adjustment in his opinion.

Moreover, the VE's identification of "basic skills" that apparently were transferable to the data clerk position was insufficient. "Basic skills" are not specific skills but rather a category of skills, as many district courts in the Ninth Circuit have found. *See Belke v. Colvin*, 2014 WL 4793701, at *9 (D. Ariz. Sept. 25, 2014) (concluding that the VE's "limited testimony," which failed to identify skills other than "basic computer skills" and the degree of vocational adjustment, "does not support the high standard for individuals of advanced age established by § 201.00(f), the Ninth Circuit decisions, and SSR 82-41"); *Reyes v. Colvin*, 2014 WL 4057181, at *4 (D. Wa. Aug. 14, 2014) ("The VE's testimony identifying 'clerical skills' is insufficiently specific as to the type of transferable skills obtained: "clerical skills" is a category of skills, and a reference to this broad category fails to support the ALJ's finding that such skills were transferable."); *Cherwink v. Colvin*, 2014 WL 6969658, *17 (N.D. Cal. Dec. 8, 2014) (declining to find transferable skills where the VE had identified only "computer skills" without explaining "what specifically those skills allow [the claimant] to do[] or how they would apply to the proposed jobs").

Defendant cites *Tommasetti v. Astrue* to argue that the ALJ's reliance on VE testimony is sufficient. 533 F.3d 1035, 1043 (9th Cir. 2008). The VE's testimony in *Tommasetti*, however, was more detailed than in the case at bar. The VE in *Tommasetti* testified that the plaintiff's "prior skills transferred to the very closely related" proposed occupation and "involve[d] similar . . . tools, . . . products, and . . . components." *Id*. This was critical testimony because under the Social Security Regulations, where transferability is at issue, it is most meaningful among jobs in which: (1) the same or a lesser degree of skill is required; (2) the same or similar

tools and machines are used; or (3) the same or similar raw materials, products, processes, or services are involved. SSR 82-41(4)(a), *available at* 1982 WL 31389 at *5. Thus, the VE's testimony in *Tommasetti* provided the precise evidence needed under 82-41(4)(a). Here, however, neither ALJ nor the VE discussed or addressed the skills or degree of adjustment in terms of tools, products, or work components. Nor did the VE testify that the data clerk position was "very closely related" to Plaintiff's past relevant work as a database administrator or software developer, like the VE testified in *Tommasetti*. The limited testimony by the VE here does not make clear the level of Plaintiff's transferable skills or the degree of vocational adjustment required to transfer to the data clerk job. *Tommasetti* therefore does not apply.

Defendant also cites to *Osenbrock v. Apfel* to support that the ALJ reasonably relied on the VE's testimony. 240 F.3d 1157, 1163 (9th Cir. 2001). The court in *Osenbrock* concluded that "[s]ubstantial evidence supported the ALJ's finding that the plaintiff's prior work experience qualified him to perform the duties of a timekeeper." *Id*. The court, however, did not conclude that (1) the VE's testimony constituted all of the substantial evidence in support of the conclusion or (2) an ALJ's conclusion is *per se* supported by substantial evidence when relying on a VE's testimony. Moreover, the court in *Osenbrock* noted that the VE testified that the duties performed by the claimant in his past relevant work were similar to those required of the proposed job (timekeeper) and that the proposed job was a move from skilled to semi-skilled. Thus, although the ALJ in *Osenbrock* may have been justified in relying on the VE's testimony, that is not the case here, where similar testimony by the VE is lacking.

Defendant also argues that "an ALJ may consider a claimant to have skills that can be used in other jobs, when the skilled or semi-skilled work activities [he] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kind of

work" and may "rely on the [] testimony of a qualified vocational expert concerning a claimant's skill development because such testimony constitutes substantial evidence." But when the expert's testimony presents inconsistencies or incomplete statements, such as conflicting with the DOT or an SSR, the ALJ is required to address these issues in his opinion. *See Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).

SSRs require that the ALJ explain any inconsistencies in VE testimony before relying on it. SSR 00-4p, *available at* 2000 WL 1898704 at *4. The VE here testified that Plaintiff could perform the duties of a data clerk as defined in DOT 209.687-010. "Evidence from a VE . . . cannot be inconsistent with [Social Security Administration] policy on transferability of skills. . . . See SSR 82-41." SSR 00-4p, 2000 WL 1898704, at *3. Because SSR 82-41 requires specific identification of the transferable skills, the conclusion by the VE that Plaintiff could perform the duties of a data clerk without identifying the requisite transferable skills is an inconsistency that should have been inquired into or explained by the ALJ. The ALJ failed to do so.

Because neither specific transferable skills nor the specific degree of vocational adjustment were identified in the VE's testimony, the ALJ erred in relying on this testimony to conclude that Plaintiff had transferable skills and could perform the job of data clerk during the 2009-2014 period. The presence of transferable skills is dispositive for a "not disabled" finding under Rule 200.01(f). Thus, this constitutes harmful error.

## C. RFC Formulation

Plaintiff argues that the ALJ erred in crafting the RFC because he did not include the need for Plaintiff's specialized chair and because he improperly evaluated Plaintiff's overhead reaching. Regarding the chair, the Commissioner responds that this allegation is really part of Plaintiff's challenge to the ALJ's assessment of credibility. This argument is rejected, because although Plaintiff testified to using the chair, Plaintiff's testimony is not the only evidence

relating to the chair. The recommendation for the chair also appears in the medical record. AR 320, 363.

SSR 96-8p states that "[t]he RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments." 1996 WL 374184 at *1. It is only when there is "no allegation of . . . and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." *Id*. at *3.

### 1. Specialized Chair

Plaintiff's specialized chair appears in the record multiple times, but the ALJ does not mention it in his opinion. The ALJ also does not include the chair in either RFC. He does not explain why he did not consider the specialized chair necessary, even in Plaintiff's credibility assessment. The ALJ simply ignores the chair.

It appears the original recommendation for the chair came from Mr. Steiner, Plaintiff's physical therapist. AR 363. Health care providers who are not "acceptable medical sources" as defined in SSR 06-03p, such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations. 2006 WL 2329939 at *2. The ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d). Because Mr. Steiner is a physical therapist, he is considered an "other" medical source. *See Huff v. Astrue*, 275 F.App'x 713, 716 (9th Cir. 2008); *Guzman v. Berryhill*, 2017 WL 4237125 at *4 (E.D. Cal. Sept. 25, 2017).

An "other" medical source may not provide medical opinions or be given "controlling" weight as a treating medical source. See SSR 06-03p at *2. An ALJ may not reject the competent

testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the compe tent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). But an ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-9. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Mr. Steiner recommended that Plaintiff "be fitted for an office chair with a cervical spine support to decrease achiness that progresses to severe pain as his work week progresses." AR 363. Additionally, Dr. Graham, notes that he "will have a prescription written for a chair" because Plaintiff's employer required a doctor's note. AR 320. Additionally, Plaintiff testified to the necessity of the chair noting it worked to decompress and stretch his neck during his work day, and his consistent use of the chair and improvement with the chair. AR 54-55, 83, 96-97. Thus, there was evidence in the record supporting Plaintiff's need for the specialized chair.

Because Plaintiff contends the chair was recommended by "other" medical source Mr. Steiner, and the necessity of the chair is not contradicted by the medical record but is bolstered by Dr. Graham's action to write the prescription, a germane reason, at least, needed to be provided to discount this opinion. Further, even if the Court were to assume that Mr. Steiner relied on the subjective complaints of Plaintiff in making the recommendation for the chair, and that was why the ALJ rejected the chair (which would be impermissible *post hoc* reasoning not supplied by the ALJ), as discussed above, the Court does not uphold that credibility finding. Accordingly, it cannot suffice as a germane reason for complete disregard of "other" medical testimony. The ALJ has erred in failing to provide a germane reason to discount Mr. Steiner's opinion and thus has erred in failing to include the chair in Plaintiff's RFC.

### 2. Overhead Reaching

Plaintiff contends that the ALJ erred in formulating the 2009-2014 RFC because the distinction between "occasional overhead reaching" and "no overhead reaching" is a "distinction without a difference." Contrary to Plaintiff's assertions, there is a quantifiable difference between these categories. "Occasional" allows reaching between zero and "up to one-third of the time." DOT 209.687-010, *available at* 1991 WL 671809. No reaching allows zero reaching. Just because they overlap at zero does not mean there is no difference in the distinction. A claimant who can reach overhead up to one-third of the time has a larger functional capacity than a claimant limited to no overhead reaching.

Plaintiff also contends that without VE testimony, there is no way to tell the difference between these categories. The Court rejects this argument because a lay person can tell the difference between these categories. Moreover, the VE testified specifically to this distinction. In response to the second hypothetical, which contained facts of an individual limited to sedentary work with the same functional limitations as Plaintiff and no overhead reaching, the VE testified

that individual would be precluded from sedentary work; whereas, in response to the same hypothetical with occasional overhead reaching (hypothetical number three), the VE testified a claimant would have the capacity to perform some sedentary positions. AR 56-8. As the Court holds, and common sense dictates, "occasional" overhead reaching and "no" overhead reaching are different, so the distinction is warranted.

Plaintiff alternatively argues that the 2009-2014 RFC, as is, still bars Plaintiff from work as a data clerk. Plaintiff contends that the position requires "frequent" reaching, while Plaintiff is limited to only "occasional" reaching. Plaintiff correctly points out that the DOT describes the data clerk position as requiring "frequent" reaching. But Plaintiff is only limited in reaching *overhead*. The DOT does not distinguish among the various reaching directions. As the Ninth Circuit explained in *Gutierrez v. Colvin*, "not every job that involves reaching requires the ability to reach overhead." 844 F.3d 805, 808 (9th Cir. 2016). In *Gutierrez*, the Ninth Circuit concluded it was "apparent and obvious" that cashiers would not have to reach overhead. *Id*. Similarly, the Court finds it unlikely that a data clerk spends more than one-third of the time (occasional) reaching overhead. Plaintiff has provided no evidence or argument why "frequent reaching" by a data clerk should be interpreted as "frequent overhead reaching." For this reason, the ALJ's determination that the frequent reaching requirement of the data clerk position was within Plaintiff's capabilities is not in error.

**D. Disability Onset Date**

Plaintiff asserts that the ALJ arbitrarily chose Plaintiff's disability onset date. The ALJ concluded that, beginning on July 1, 2009 and ending on June 18, 2014, Plaintiff was limited to "occasional overhead reaching," whereas beginning on June 18, 2014, Plaintiff became limited to "no overhead reaching." Based on the change in Plaintiff's reaching ability, the ALJ found Plaintiff disabled as of June 18, 2014. Plaintiff further argues that, to select this date, the ALJ

improperly relied on the treatment recommendation of chiropractor Dr. Rebecca Monreal dated that day. Dr. Monreal, reading Plaintiff's 2013 MRI, suggested that Plaintiff obtain a medial branch block to treat his pain. Plaintiff claims the ALJ's partition as of that date is arbitrary because Plaintiff's pain was the same before and after this date, and there is not substantial evidence supporting the ALJ's selection of this date.

Although Plaintiff and the Commissioner brief at length the issue of Plaintiff's disability onset date, neither party addresses the ALJ's responsibility, under SSR 83-20 and Ninth Circuit case law, to resolve an ambiguous onset date by calling on a medical expert. *See Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998) ("[W]e reaffirm this court's previous holding that where a record is ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date." (citing SSR 83-20, *available at* 1983 WL 31249 (Jan. 1, 1983))). The ALJ found Plaintiff disabled, and, given Plaintiff's specific disability, the medical evidence is ambiguous as to the onset date. Under these circumstances the SSR and Ninth Circuit precedent require the ALJ to apply SSR 83-20. Accordingly, the Court analyzes this issue considering SSR 83-20.

The disability onset date may be at issue when a claimant's symptoms are progressive in nature. SSR 83-20. Thus, SSR 83-20 requires that the ALJ develop the record when the disability onset date is ambiguous. *See Armstrong*, 160 F.3d at 590-91 ("If the 'medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.'" (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991)). SSR 83-20 reads, in relevant part:

> With slowly progressive impairments, it is sometimes impossible
> to obtain medical evidence establishing the precise date an

impairment became disabling. Determining the proper onset date is
particularly difficult, when, for example, the alleged onset and the
date last worked are far in the past and adequate medical records
are not available. In such cases, it will be necessary to infer the
onset date from the medical and other evidence that describe the
history and symptomatology of the disease process.

* * *

This judgment, however, must have a legitimate medical basis. At
the hearing, the administrative law judge (ALJ) should call on the
services of a medical advisor when onset must be inferred. If there
is information in the file indicating that additional medical
evidence concerning onset is available, such evidence should be
secured before inferences are made.

1983 WL 31249, at *2-3.

In *Armstrong*, because the claimant's disability had progressed over a period of years, the
exact disability onset date was not clear from the medical record. 160 F.3d at 590. The ALJ
therefore should have inferred the disability onset date under the guidance of SSR 83-20. The
Ninth Circuit concluded in *Armstrong* that under SSR 83-20 an ALJ *must* call a medical expert
where the record is ambiguous as to the disability onset date. *Id.* at 590.

Similar to the claimant in *Armstrong*, Plaintiff's medical record shows a degenerative
disc disease that has worsened over time. Because of the nature of this disease, and the specific
medical evidence in this case, the disability onset date is unclear from the medical record.
Accordingly, the ALJ should have, pursuant to SSR 83-20, called a medical expert to testify to
the disability onset date.

Furthermore, in the case of "conditions [that] build slowly over time, . . . it helps to have
medical expertise to determine when the symptoms became severe enough so that the claimant
became disabled under Title II." *Diedrich v. Berryhill*, 874 F.3d 634, 639 (9th Cir. 2017). In
*Deidrich*, the ALJ relied on the determinations of psychological consultants, who examined the
claimant's medical record, for the disability onset date. The Ninth Circuit reversed, holding that

because the physicians' analyses had occurred before lay witness testimony and because the physicians did not have the benefit of viewing the record as a whole, they were not reliable for disability onset purposes. *Id*. Accordingly, the Ninth Circuit concluded, that "if analysis from [psychological] consultants was a sufficient substitute for the testimony of a medical advisor, then SSR 83-20 would be superfluous." *Id*. Similarly, Dr. Monreal's chiropractic consulting, done before the hearing and without the benefit of the developed medical record, cannot be "a sufficient substitute for the testimony of a medical advisor" and does not comply with SSR 83-20. Moreover, the Ninth Circuit has held that the ALJ *must* inquire about disability onset date *at the hearing*. *Diedrich*, 874 F.3d at 639 (concluding that "SSR 83-20 states that the ALJ should call a medical advisor at the hearing"). Although the ALJ here relied on Dr. Monreal's recommendation in the record, the ALJ did not question a medical advisor "at the hearing" as is required.

Defendant argues that the ALJ selected June 18, 2014, because Plaintiff's allegations were not credible before that date because they did not match the objective medical evidence. As discussed above, the Court disagrees that the medical evidence contradicts Plaintiff's testimony. As the medical record demonstrates, it is unlikely that Plaintiff had been managing under conservative treatment until June 18, 2014. Dr. Monreal makes this determination as well in her recommendation for a medial branch block where she notes that Plaintiff has multiple "failed attempts at conservative treatment." AR 457. Dr. Monreal specifically identifies the various pain medications, TENS unit, and physical therapy as having been "no help" to Plaintiff. *Id*. It is not a rational reading of the record that the conservative methods suddenly stopped working in June 2014 and despite working up to that date. To the contrary, the record supports that conservative treatment was not working and Plaintiff's symptoms were escalating.

Given the symptomatic progression that is determinable from the medical record, June 18, 2014 is an arbitrary selection not supported by substantial evidence. Accordingly, although Plaintiff was disabled on June 18, 2014, "that was not necessarily the date on which he became disabled." *Armstrong*, 160 F.3d at 590. Because Plaintiff's disability onset date is not readily determinable from the record, the ALJ must question a medical advisor at the hearing to determine Plaintiff's disability onset date. SSR 83-20. The ALJ erred in failing to do so.

## E. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The United States Court of Appeals for the Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next

review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.

If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. A district court is generally not required to exercise such discretion, however. District courts retain flexibility in determining the appropriate remedy and a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted).

Here, there remains a necessary inquiry as to Plaintiff's transferable skills, vocational adjustment, consideration of Mr. Steiner's opinion and whether the specialized chair should be included in Plaintiff's RFC, and a proper determination of Plaintiff's disability onset date that complies with SSR 83-20. Thus, remand for further proceedings is appropriate.

## CONCLUSION

For the reasons stated, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

**IT IS SO ORDERED**.

DATED this 27th day of March, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge